## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## JONESBORO DIVISION

**JOE WILLIE LOVE**                                                                    **PLAINTIFF**

**VS.**                                    **CASE NO. 3:15CV00179 PSH**

**CAROLYN W. COLVIN, Acting Commissioner,**
   **Social Security Administration**                                    **DEFENDANT**


### ORDER

Plaintiff Joe Willie Love ("Love") appeals the final decision of the Commissioner of the

Social Security Administration (defendant "Colvin") to deny his claim for disability benefits

("DIB") and Supplemental Security Income ("SSI").  Love contends the Administrative Law Judge

("ALJ") erred in finding he could perform sedentary work.  The relevant time period in this case is

from March 6, 2003, through March 29, 2007[1].  The parties ably summarized the medical records

and the testimony given at the administrative hearings, which were conducted on November 27,

2007, and on July 31, 2012.  A second administrative hearing occurred because this Court remanded

the case for further proceedings.  (Tr. 513-524).  The Court has carefully reviewed the record to

determine whether there is substantial evidence to support Colvin's decision.  42 U.S.C. § 405(g).

A review of some testimony and medical records is of benefit.  In both administrative

hearings, Love identified March 6, 2003, as the onset of his disability due to an on-the-job back

---

[1]
In another proceeding, an ALJ found Love disabled as of March 30, 2007.  As a result, our inquiry
is limited to the four year period from March 2003 through March 2007.

injury that day.  (Tr. 468, 575).  An orthopedic surgeon, Dr. Knight ("Knight"), greatly restricted Love in late March 2003, indicating he could lift 5 pounds continuously, 10 pounds intermittently, and he could continuously sit, stand, and walk for 2 hours, and that Love could not climb, kneel, bend, stoop, twist, push/pull, reach, lift over his shoulders, drive at work, or operate machinery.  (Tr. 414).  Three days after Knight's restrictions were imposed, an MRI revealed severe central stenosis at L4-L5.  (Tr. 307).  Two surgeries ensued.  On October 13, 2003 neurosurgeon Sorenstam performed a discectomy at L4-L5, a laminectomy at L4, and partial laminectomies at L3 and L5. (Tr. 238-39).  Love continued to have some pain after the surgery, receiving an epidural block in February 2004.  An April 2004 x-ray showed joint space narrowing at L4-L5.  A May 2004 MRI showed a recurring problem at L4.  (Tr. 283).  Neurosurgeon Brophy ("Brophy") performed a "reoperation bilateral L4-5 discectomy" on July 30, 2004.  (Tr. 226).  In the months following the surgery, Brophy made the following recommendations about Love's return to work:

> July 30 – Love was to remain off work with a further evaluation in four weeks, and begin a gradual walking home exercise program.
>
> September 9 – Love was cleared to return to work at light duty, no lifting over 10 pounds and no repetitive stooping or bending.
>
> October 7 – Love was cleared to return to work with a 20 pound lifting limit, and no repetitive stooping or bending.
>
> October 25 – Noting Love's "perceived inability to return to work," Brophy suggested an MRI be done, and cleared Love to return to sedentary work.  (Tr. 256).
>
> October 27 – MRI was performed, and radiologist Laster opined there was "enhancement of the L4-L5 disc space which is likely mechanical in etiology."  (Tr.

263).

November 15 – Brophy clears Love to return to work with a 20 pound lifting limit and no repetitive stooping or bending.

November 18 – Love complained of substantial back pain when doing squats at physical therapy, and was sent to the emergency room.

November 29 – Brophy cleared Love to return to work with a permanent 40 pound lifting limit.

February 28, 2005 – Brophy again noted Love was cleared to return to work with a permanent 40 pound lifting restriction.

**The ALJ erred in finding Love could perform sedentary work:** Love contends the ALJ erred in finding he could perform sedentary work throughout the relevant time period from March 6, 2003, through March 29, 2007.  Alternatively, Love urges the ALJ erred in finding he could perform sedentary work for the period from March 6, 2003, through September 9, 2004, when Brophy cleared him to return to light work.  A key component of both arguments is the credibility assigned to Love.

The ALJ discounted Love's credibility due to inconsistencies in the record, such as his testimony of pain at 10 on a scale of 1-10 for the period from March 6, 2003, through March 29, 2007, compared to notes from physical therapy showing Love rated his pain at 3, 4, and 5 on occasions during 2004, as well as the absence of any treatment after February 2005.  We are persuaded that substantial evidence supports the ALJ's credibility finding for the period after September 9, 2004, when Brophy opined Love could return to work.  In particular, the failure of Love to seek any treatment after February 2005 is telling.  There is no error in the ALJ's conclusion

that Love was not disabled from September 9, 2004, through March 29, 2007.

We find, however, there is not substantial evidence to support the ALJ's finding that Love was not disabled from March 6, 2003, to September 9, 2004.  There is agreement that Love was unable to work from October 13, 2003, when he had his first back surgery, until September 9, 2004, when Brophy indicated Love could return to light work.  This period, however, is less than twelve continuous months and does not qualify for disability purposes.  As a result, we must focus on whether Love could work from the time of his injury until his October 2003 surgery.  In concluding Love could work during this time frame, the ALJ discounted Love's testimony and also considered the findings of Knight, who treated  Love during this period.  Eleven days after his March 6, 2003, on the job injury[2], Knight diagnosed Love with lumbar strain and described his work status: "The patient is restricted to 5 pounds continuous lifting, 10 pounds intermittent lifting and 2 hours of continuous sitting, 2 hours continuous standing, 2 hours continuous walking; and restricted from climbing, kneeling, bending, stooping, twisting, push/pull, reaching and lifting over the shoulder activity, driving at work and operating machinery."  (Tr. 414).  With the foregoing restrictions, Knight noted Love's return to work date to be March 17, 2003.  Two weeks later Knight diagnosed Love with back pain, provided the identical work status description as he had on March 17, and assigned Love a return to work date of March 31.  On April 7, Knight included the same restrictions in his work status description, and noted Love's return to work date to be April 7.  (Tr. 420).  The same restrictions remained when Knight saw Love on May 5.  Knight wrote that Love's return to work date was May 5.  (Tr. 413).  On May 23 another doctor at Knight's  Memphis Orthopaedic

---

[2] Love testified that he was lifting a large tire when "something just snapped in my back part."  (Tr. 468).

Group executed an "Employment Report" which shows Love's previous work status as "off", his current work status as "off", and his return to work date as "off". (Tr. 417).

The ALJ considered Knight's findings. On one hand, the ALJ assigned "significant weight" to Knight's opinion that Love could work. At the same time, the ALJ afforded "no weight" to the restrictions Knight imposed. (Tr. 506). This approach is erroneous. The restrictions imposed by Knight are detailed, dealing with Love's ability to sit, stand, walk, lift, climb, kneel, bend, etc. The parties note that Knight prohibits sitting continuously for more than 2 hours at a time, and they debate whether this translates into an ability to perform sedentary work, which involves approximately six hours of sitting in the workday. This debate, however, ignores the numerous other restrictions imposed by Knight. Taken as a whole, the restrictions suggest Love could not work after his injury despite the "return to work" dates Knight assigned him. These detailed restrictions, which were not lifted from the time they were imposed until the surgery performed by Sorenstam in October 2003, should have been afforded greater weight in the ALJ's analysis. Similarly, the ALJ erred in giving significant weight to Knight's general opinion that Love could work[3]. When a treating physician offers a general opinion which conflicts with his own detailed and specific restrictions, we would expect the ALJ to embrace the specific over the general.

In summary, it is not uncommon for a claimant's subjective allegations to be discounted due to the absence of physician-imposed restrictions and due to a conservative course of treatment. In

---

[3] Knight's records containing a "return to work" date but also containing restrictions are not terribly helpful, in that the restrictions he imposed clearly indicate Love could not return to his job, which was a physically demanding job. (Tr. 468).

this instance, treating physician[4] Knight imposed numerous restrictions and Love sought and received aggressive treatment resulting in two surgeries.  The finding of the ALJ that Love was not disabled from March 6 to October 13, 2003, is not supported by substantial evidence.

This case must be remanded.  On remand, the Commissioner is directed to award benefits for the period from March 6, 2003, to September 9, 2004.

IT IS THEREFORE ORDERED that the final decision of Colvin is reversed and remanded for the award of benefits.  This remand is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO ORDERED this 21st day of April, 2016.

_____
UNITED STATES MAGISTRATE JUDGE

---

[4] A treating physician's medical opinions are given controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with the other substantial evidence.  *See Choate v. Barnhart*, 457 F.3d 865, 869 (8th Cir. 2006) (internal quotations omitted).